IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASON MICHAEL SCOTT NELSON,

    Defendant.

No. 1:11-cr-30029-1-PA

**ORDER**

**PANNER, District Judge:**

Defendants Jason Michael Scott Nelson and Richard Michael Sherman are charged with conspiracy to manufacture marijuana and manufacture of marijuana.

Nelson moves to suppress evidence. I deny the motion.

### FINDINGS OF FACT

On May 16, 2011, Ray Myers, a Grants Pass police officer, learned that Elizabeth Saul had been arrested in Portland while trying to ship 74 pounds of marijuana to Boston, Massachusetts.

1 - ORDER

Saul, a registered medical marijuana grower with no criminal record, was cooperating with law enforcement. She consented to the search of her house near Grants Pass.

In a building next to Saul's house, Myers and officers Jim Johnson and John Mogle of the Oregon State Police (OSP) found a marijuana grow with more plants than permitted by the Oregon Medical Marijuana Program. Officers also found scales, packing materials, and $15,000 in cash.

Saul said she had made five or six shipments of marijuana to the East Coast during the past six months. She combined her marijuana with marijuana from other growers in the Grants Pass area and shipped it to East Coast buyers. Saul had made about $125,000 during six months preceding her arrest.

Saul told officers that for her most recent shipment, she picked up 28 pounds of marijuana from Nelson's co-defendant, Richard Michael Sherman, at Sherman's residence, on May 14, 2011. Saul had known Sherman for three years as a marijuana "trimmer." During the previous six months, Sherman had supplied Saul with 60 to 70 pounds of marijuana.

Saul told officers that on May 15, 2011, Sherman drove to her residence to deliver another 18 pounds of marijuana in one-pound, heat-sealed plastic bags. Sherman told Saul that "Jason," his supplier, had weighed and packaged the marijuana. Sherman said Jason was part-owner of a bicycle shop where Sherman worked,

and that Sherman rented a house from Jason, who lived in an adjacent house. Saul gave the officers accurate directions to the property where Sherman and Jason lived.

Based on Saul's information, Myers identified "Jason" as defendant Jason Nelson. Records kept by the Oregon Medical Marijuana Program indicated there was a grow site on Nelson's property.

Myers told OSP Sgt. Johnson that he had probable cause to arrest Sherman for the unlawful possession, manufacture, and delivery of marijuana. In the early afternoon of May 17, 2011, Johnson saw a vehicle matching the description of Sherman's vehicle and followed it into Sherman's driveway. The gate across the driveway was open.

After identifying himself, Johnson talked to Sherman. At that point Sherman was not free to leave, although he was not handcuffed.

OSP Det. Mogle arrived a few minutes later. Sherman told Mogle he lived in the first house, and Nelson lived in a second house a little farther up the driveway. Sherman consented to a search of his house, which contained several pounds of trimmed marijuana. Sherman told officers that a large shipping container near his house also contained marijuana.

Mogle walked up the driveway through an open gate to the second house. Nelson testified that he kept the gate closed, but

3 - ORDER

admitted he did not know whether the gate was open or closed on the day of the search. Nelson had left the property the day before and would not return for several days.

Mogle continued walking up the driveway toward a third house. That house belonged to Rodney Nelson, Jason Nelson's father, but was apparently vacant.

Standing in the driveway next to the third house, Mogle saw windows covered from the inside with black plastic. Mogle noticed that the plastic was coated with condensation, and a fan was running inside the house. Mogle considered the fan and the black plastic to be consistent with a marijuana grow operation.

Myers worked with an assistant district attorney during the afternoon to complete the affidavit in support of the search warrants. At 8:45 that evening, a state court judge approved the search warrants.

### LEGAL STANDARDS FOR DETERMINING PROBABLE CAUSE

To determine whether a search is reasonable, the court considers the totality of the circumstances. United States v. Mayer, 560 F.3d 948, 956 (9th Cir. 2009).

> In determining whether probable cause exists, a neutral and detached magistrate must evaluate the totality of the circumstances set forth in the search warrant affidavit to make a practical, common-sense decision whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." "Direct evidence linking criminal objects to a particular site is not required . . . ." Rather, the "magistrate need only determine that a fair probability exists of finding evidence considering the type of

4 - ORDER

crime, the nature of the items sought, the suspect's
opportunity for concealment and normal inferences about
where a criminal might hide stolen property." In
making its determination, "the court issuing the
warrant is entitled to rely on the training and
experience of police officers."

United States v. Parks, 285 F.3d 1133, 1142 (9th Cir. 2002)
(footnotes omitted).

## DISCUSSION

### I. Sherman as an "Unwitting Informant"

Nelson describes Sherman as an "unwitting informant" whose statements should not be considered. Cf. United States v. Artez, 389 F.3d 1106, 1112-13 (10th Cir. 2004) (use of an "unwitting informant" as a middleman between a confidential informant and a suspect did not invalidate controlled purchase). Whether information about Nelson and his property came directly from Saul or indirectly from Sherman through Saul, the information was sufficiently reliable to support probable cause.

### II. Mogle's Observations of the Third House

Nelson argues for exclusion of Mogle's statements about the third house. Mogle acted no more intrusively than a delivery driver dropping off a package. Even if I were to exclude Mogle's observations, the affidavit includes ample information to establish probable cause.

### III. Evidence Derived from Oregon's Medical Marijuana Program

Nelson argues that in the spirit of comity, this court should strike information based on records kept by the Oregon

5 - ORDER

medical marijuana program. I need not resolve this issue because the affidavit supports probable cause regardless of information obtained through the medical marijuana records.

**CONCLUSION**

Nelson's motion to suppress (#35) is denied.

IT IS SO ORDERED.

DATED this ⁄8 day of April, 2011.

*Owen M. Panner*

OWEN M. PANNER
U.S. DISTRICT JUDGE